### JIM ELLIS v. THE STATE.

#### No. 464. Decided February 23, 1910.

**Gaming—Pool Table—Betting—Insufficiency of the Evidence.**

Where, upon trial for unlawfully betting at a certain gaming table, there was evidence that it was a general custom that the loser paid the table fees, but there was no evidence that the defendant had any knowledge of this custom, and defendant denied ever having bet at such a game where there was an agreement and understanding that the loser was to pay the table fees, and that he paid the fees when he played regardless to whether he won or lost, the conviction could not be sustained.

Appeal from the County Court of Scurry. Tried below before the Hon. C. R. Buchanan.

Appeal from a conviction of unlawfully betting at a gaming table; penalty, a fine of $10.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was convicted in the County Court of Scurry County on the 4th day of October last year on a charge that he did unlawfully bet and wager at a certain gaming table, to wit, a pool table.

There are a number of questions raised in the record, but after a careful study of the statement of facts it has seemed to us the conviction can not be sustained under the evidence introduced. S. O. Chapman, who was constable of Precinct No. 1, Scurry County, testified that on the 8th day of June, 1909, he saw appellant Pat Brown and W. H. Gamble play three games of pool in C. E. Davis' pool-hall, and that Brown lost the games, and paid for all three of them. He further testified that he had observed the playing at that pool hall a great deal, and that it was a rule of the players for the loser to pay the fees of the table. He does not say, however, that he ever saw these parties play before or since the time named, nor is the custom to which he testifies, if it was a custom, shown to have been brought home to the knowledge of appellant. On cross-examination Chapman makes this further statement: "I do not know whether Pat Brown paid for these games because he lost them or not. All I know is that he did pay for them, and that he did lose them." Appellant, being sworn in his own behalf, testified that he remembered the game testified about, and then makes the following statement: "I have never played any game there where there was an agreement or understanding that the loser was to pay the fees of the table. Sometimes I paid when I won. I might have paid sometimes when I lost. If I did I did not pay because I lost the game. If I invited a friend to go in and play with me, I expected to pay for all the games. So far as I have observed, it is the rule in that pool-hall for each player to pay for his own cue." C. E. Davis testified as follows: "The rules of my house are that each player must pay for his own cue, and my signs to that effect are displayed conspicuously on the walls. I have never known a game played in my house where the loser paid the fees of the table. I would not have permitted it, as it is contrary to my rules and to the custom of my house." J. B. Boles, sheriff of Scurry County, and O. P. Wolf, marshal of the city of Snyder, testified as follows: "That they had been in the pool-hall for the purpose of detecting violations of law, if any, and had been unable to find that the law was being violated there. And both stated that they did not know of any custom of the pool-hall whereby the loser of the game was required to pay the fees of the table." In rebuttal J. T. Carpenter and C. C. Bracken, who were introduced by the State, testified that they had observed the players a great deal in Davis' pool-hall, and that it was the

custom for the loser of the game to pay the fees of the table. This is the substance of all the testimony.

Unless, therefore, we are prepared to hold the case was made out by the mere fact that the loser in a game paid the fees on a particular occasion, and the further fact that there was evidence that this was the general custom would, in the absence of knowledge of that custom being brought home to appellant, be sufficient to sustain the conviction, it ought to be reversed. We do not think the evidence is sufficient, and the judgment of conviction is, therefore, reversed and the cause is remanded.

*Reversed and remanded.*